UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ROBERT A. BERMAN,<br><br>Plaintiff,<br><br>v.<br><br>JOSEPH D. CROOK, JR., et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No: 16-cv-2153-RCL<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION

Plaintiff Robert A. Berman brings this case *pro se* against defendants Joseph D. (Donald) Crook, Jr., a Special Agent with the Department of the Interior; Brenda K. Morris, a former attorney in the Criminal Division of the Department of Justice; and David M. Finkelstein and Judith Rabinowitz, attorneys in the Commercial Litigation Branch of the Civil Division of the Department of Justice. Before the Court is the defendants' Motion to Dismiss the Amended Complaint. ECF No. 29. Upon consideration of the defendants' motion, the opposition and replies thereto, the applicable law, and the entire record herein, the Court will **GRANT** the Motion to Dismiss.

I. BACKGROUND[1]

Plaintiff Robert A. Berman is a former senior economist in the Department of the Interior. He provided assistance to a nonprofit organization, Project on Government Oversight ("POGO"), in connection with POGO's *qui tam* actions to recover unpaid royalties owed by oil companies to

---

[1] The facts in this section come from the Amended Complaint, documents incorporated by reference in the Amended Complaint, and from the long public record of this case (of which the Court can take judicial notice).

1

the federal government. Mr. Berman declined to join as co-relator in the actions, but he and POGO agreed that he would receive one third of POGO's recovery. After the United States intervened, it recovered $440 million from the companies. POGO received a $1.2 million share of the settlement and issued a check to Mr. Berman for $383,600. *See* Case No. 03-cv-00096, ECF No. 168 at 2-3.

Subsequently, in 1998, Brenda Morris impaneled a grand jury to investigate Mr. Berman. She sought and obtained a warrant to search his office based on the affidavit of Donald Crook, a Special Agent with the Department of the Interior. The government did not seek an indictment of Mr. Berman and he was not charged with any crimes. During the investigation, however, the government was granted a motion to seal the Crook affidavit. After Mr. Berman moved to unseal in 2000, the government provided Mr. Berman a redacted version of the affidavit, who claimed that it was full of fabrications, half-truths, and unsupported speculation. In 2008, the court ordered that the affidavit be unsealed, but the Clerk's office failed to unseal the affidavit at that time. In 2013, the court again ordered the Clerk's office to unseal the affidavit.

Meanwhile, in 2003, the government—represented in part by Judith Rabinowitz—filed a civil action against Mr. Berman for disgorgement of the payment that he had received from POGO. The government sought disclosure of the grand jury material gathered during the investigation, and its petition was granted by the court. In granting the government's motion, Judge Hogan noted that "[n]o opposition has been filed." ECF No. 16-4 (under seal). The grand jury material was transferred from the Criminal Division to the Civil Division. The case eventually went to trial in 2008 and a verdict was issued in favor of the government. Mr. Berman appealed and the verdict was vacated and the case was remanded. Mr. Berman, now proceeding *pro se*, filed a motion to dismiss and for sanctions, and a motion to compel affidavits and other evidence on which the

government intended to rely, which was denied as premature. In 2012, the court denied the motion to dismiss and for sanctions, and granted summary judgment in favor of the government on one of the counts—the breach-of-fiduciary-duty count. David Finkelstein then entered an appearance in the case for the government and a second jury trial was held on the remaining claims which ended in a mistrial. In 2014, the D.C. Circuit upheld the district court's summary judgement finding that Mr. Berman breached his fiduciary duty and that he had to disgorge the payment he received from POGO. *United States v. Project on Gov't Oversight*, 766 F.3d 9 (D.C. Cir. 2014).

In 2013, Mr. Berman filed a motion to unseal, seeking access to materials related to the search warrant, which the court interpreted as a petition for grand jury materials. The court ordered Mr. Berman to provide justification for the disclosure. Mr. Berman claimed that the remaining grand jury materials were relevant to his pending D.C. Circuit case and his case before the Merit Systems Protection Board. In February 2014, after order by the court, the government disclosed the remaining grand jury materials to Mr. Berman.

Mr. Berman now brings a *Bivens* action seeking damages against the defendants for providing a false search warrant affidavit and for conducting an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments; for conspiring to deny his due process rights by denying access to a search warrant affidavit and for knowingly using the fruits of an unlawful search; for conspiring to deny his due process rights by unlawfully misappropriating district court records; and for conspiring to use the grand jury in service of a planned civil suit. Although Mr. Berman reframed his claims under a *Bivens* theory in his Amended Complaint, the individual counts still assert claims against the defendants under 42 U.S.C. § § 1983, 1985, and 1988.

In support of his claims, Mr. Berman argues that Ms. Morris knew, prior to launching the criminal investigation, that a document existed that refuted her theory of criminal misconduct, but

she never disclosed the document to the grand jury. He further states that the search warrant affidavit signed by Mr. Crook contained false allegations, and absent those false allegations, the affidavit could not support a finding of probable cause. Turning to the 2003 civil case, Mr. Berman states that Ms. Rabinowitz used materials gained from the illegal search to support the government's case and notes that despite the expiration of the seal, the search warrant materials remained under seal. Then Ms. Rabinowitz filed a motion to obtain a copy of the grand jury materials, including the search warrant affidavit, failing to disclose that the investigation was closed without seeking an indictment. Mr. Berman claims that Ms. Rabinowitz and Ms. Morris conspired to transfer the records—which were the property of the district court—with the intent to deny Mr. Berman access.

Mr. Berman further posits that in 2008, Ms. Morris filed a motion with a different magistrate judge to unseal the affidavit and did not include a certificate of service so that Mr. Berman would not be aware of the filing. Mr. Berman asserts that it was not until mid-2013—after he had filed a motion to unseal the affidavit—that the government revealed that Ms. Morris had closed the grand jury investigation without seeking indictment and that it intentionally withheld the search warrant affidavit from civil pre-trial discovery by alleging that it contained grand jury material, and that due to age, the record was likely destroyed. In November 2013, the magistrate judge determined that there were no grand jury materials in the search warrant affidavit and ordered that it be unsealed. In addition, Mr. Berman argues that Mr. Finkelstein intentionally, and without authorization, distributed grand jury documents to individuals not authorized to view them and that he introduced the fruits of the illegal search and lied to the district court regarding false statements in the affidavit.

On May 17, 2017, the defendants moved to dismiss all of Mr. Berman's claims alleged in his Amended Complaint.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint in the light most favorable to the plaintiff. A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the factual allegations in the complaint need not be "detailed," the Federal Rules require more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 193 (D.C.Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal quotation marks omitted)). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

### B. Rule 12(b)(2) Standard

5

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a suit if the court lacks personal jurisdiction over it. The plaintiff bears the burden of establishing personal jurisdiction. See *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008). In deciding whether the plaintiff has shown a factual basis for personal jurisdiction over a defendant, the court resolves factual discrepancies in favor of the plaintiff. See *Crane v. N.Y. Zoological Soc'y*, 894 F.2d 454, 456 (D.C. Cir. 1990).

## III. DISCUSSION

### A. Claims Under 42 U.S.C. §§ 1983, 1985, 1988

While the plaintiff notes in his Amended Complaint that his claims are brought under *Bivens v. Six Unnknown Agents*, 403 U.S. 388 (1971), the individual counts in the Amended Complaint still appear to assert claims under 42 U.S.C. §§ 1983, 1985, and 1988. To the extent the plaintiff brings claims under those statutes, the Court will address why they must be dismissed.

42 U.S.C. § 1983 expressly applies only to those acting under color of state law.[2] Section 1983 does not create a cause of action for federal officials acting under color of federal law. *See, e.g., Abramson v. Bennett*, 707 F.Supp. 13, 16 (D.D.C. 1989). Here, all four defendants were federal officials acting under color of federal law. Accordingly, the Court must dismiss the claim for failure to state a claim upon which relief can be granted.

Plaintiff does not indicate the subsection of 42 U.S.C. § 1985 under which he's bringing a claim. As the defendants note, Section 1985(3) appears most relevant given that it relates to

---

[2] Section 1983 states, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

"[d]epriving persons of rights or privileges."[3] However, in order to state a claim for relief under this subsection, one must allege that there was some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Here, the plaintiff does not allege that race or class-based animus played a role. As such, any claim under Section 1985 must be dismissed for failure to state a claim.

Finally, Section 1988 does not create a federal cause of action; rather, it "governs the jurisdiction and procedure of federal courts with respect to civil rights claims." *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 77 (D.D.C. 2007). Thus, any claim brought under that section must also be dismissed.

### B. *Bivens* Claims Brought Against Crook—Counts I and II

Counts I and II are specifically directed against Special Agent Crook. Mr. Berman alleges that Mr. Crook's "search warrant affidavit contained numerous false allegations that were known to be false at the time." Amended Complaint, ECF No. 20-1 at ¶ 12. Specifically, Mr. Berman avers that the affidavit contains the following false allegations: (1) that he "participated in the Interagency Task Force"; (2) that he provided proprietary information to POGO; and (3) that he was "OPA's lead analyst in the rule makings conducted by MMS." *Id.* Berman argues that "[a]bsent the false allegations, the affidavit could not support a finding of probable cause. *Id.* at ¶ 13. Based on those alleged facts, Berman brings Counts I and II in his Amended Complaint, arguing that Crook knowingly provided a false affidavit (Count I) and that he unlawfully conducted a search and seizure without a valid search warrant (Count II).[4]

---

[3] Neither of the other two subsections of the statute remotely apply to the facts of this case. Subsection 1985(1) relates to preventing an officer from performing his or her duties and subsection 1985(2) applies to obstruction of justice through the intimidation of a party, witness or juror.

[4] Mr. Berman also alleges in his Amended Complaint that "*ALL* affidavit allegations contain intentionally or recklessly false statements or misleading omissions." ECF No.20-1 at ¶ 13 (emphasis in original). He reiterates that

7

A plaintiff may bring a suit for damages against federal officials in their individual capacities for constitutional violations. "To state a prima facie *Bivens* claim, the plaintiff must establish that: (1) the defendant violated a federal constitutional right of the plaintiff, *Lewis v. Bayh*, 577 F.Supp.2d 47, 57 (D.D.C. 2008); (2) the right was clearly established, *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 689 (D.C. Cir. 2009); (3) the defendant was a federal actor by virtue of acting under color of federal law, *CHS Indus., LLC v. U.S. Customs & Border Prot.*, 653 F.Supp.2d 50, 55 (D.D.C. 2009); and (4) the defendant was personally involved in the alleged violation, *Garcia v. Sebelius*, 867 F.Supp.2d 125, 137 (D.D.C. 2012)." *Patterson v. United States*, 999 F.Supp.2d 300, 308 (D.D.C. 2013). When a plaintiff brings an action for money damages against a federal official in his individual capacity, the official may entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998).

In the context of a constitutional claim of alleged falsity in a warrant application, the Supreme Court has explained that all warrant applications carry an expectation of truthfulness:

> When the Fourth Amendment demands a factual showing sufficient to comprise "probable cause," the obvious assumption is that there will be a *truthful* showing. This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quotation and citations omitted) (emphasis in original). The Fourth Amendment is violated only when the affiant made a "false statement

---

point in his opposition to the Motion to Dismiss. But the Court need not accept as true that conclusory statement, as it is unsupported by specific facts.

8

knowingly and intentionally, or with reckless disregard for the truth" and that false statement "is necessary to the finding of probable cause." *Id.* at 155–65.

In order to establish that the false statement is *necessary* to the probable cause finding the court must "excise any information that is allegedly false and include any information allegedly omitted, thus creating a 'hypothetical, redacted affidavit,' and it must then ask whether that affidavit 'still established probable cause.'" *Lane v. District of Columbia*, 211 F.Supp.3d 150, 173 (D.D.C. 2016) (quoting *United States v. Cardoza*, 713 F.3d 656, 659 (D.C. Cir. 2013)). Reviewing whether the "hypothetical, redacted affidavit" establishes probable cause is a question of law. *Cardoza*, 713 F.3d at 659.

The Court finds that the specific statements alleged to be false in the Amended Complaint were not material to the probable cause determination. Even if those statements—which the Court listed above—were removed from Crook's affidavit, there would still be sufficient evidence for a probable cause finding with respect to a violation of 18 U.S.C. § 209 (the statute identified cited in the affidavit). Under the statute, "[w]hoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of the executive branch of the United States Government ... from any source other than the Government of the United States ... [s]hall be subject to the penalties set forth in section 216 of this title." The affidavit indicates that Mr. Berman received a payment of $383,600 from POGO. Case No. 00-mj-00138, ECF No. 3-1 at ¶ 6. The affidavit also highlights that Mr. Berman worked on oil royalty valuation matters and that POGO had within its possession a DOI internal, confidential memorandum authored by him. *Id.* at ¶¶ 13, 15. On those facts alone—which Mr. Berman does not allege were false in his Amended Complaint—a court could find probable cause. Moreover, the standard in this case is even lower—"[g]iven the nature of the qualified immunity calculus, if

the facts in the record could at least arguably give rise to probable cause, then a defendant is entitled to qualified immunity." *Pitts v. District of Columbia*, 177 F.Supp. 3d 347, 358 (D.D.C. 2016) (quotations and citations omitted). Here, the affidavit—with the alleged false statements removed—certainly clears that hurdle. The affidavit establishes that Mr. Berman received money while employed by the federal government from an entity that had his internal, confidential memos on a topic related to the *qui tam* suit. Thus, the plaintiff has failed to plead a plausible claim that Crooks violated a clearly established constitutional right.

The defendants also correctly note that Mr. Berman's claims related to the search warrant are time-barred. A three-year limitations period applies to *Bivens* claims, *see Banks v. Chesapeake and Potomac Telephone Co.*, 802 F.2d 1416, 1429 (D.C. Cir. 1986) (three-year limitations period in D.C. Code § 12-301(8) applies to most *Bivens* actions), and the claim accrues at the time the plaintiff learns of the conduct, *see Rudaj v. Treanor*, 522 Fed. App'x. 76 (2d Cir. June 17, 2013). Here, Mr. Berman's claim accrued in 2000 when he learned of the search of his office. *See, e.g.*, Case No. 00-mj-00138, ECF No. 5 (Mr. Berman's motion to unseal the search warrant). That same year, he received a redacted copy of the affidavit, including the portions with the statements that he now alleges were false. At the time he characterized the affidavit in a court filing as a "compendium of outright fabrications, half-truths, and unsupported speculation of the rankest sort." *Id.*, ECF No. 10 at 2. Accordingly, his current position—that since he did not receive the unredacted affidavit until November, 2013, the claim cannot be barred—is without merit. Mr. Berman was aware of the search in 2000 and believed at the time that the affidavit contained false allegations. Thus, his claims under Count I and II are outside the limitations period and must be dismissed as time barred.

  B.  **Plaintiff's Due Process Claims Brought Under *Bivens***

10

In his Amended Complaint, Mr. Berman also asserts deprivation of due process claims: (1) Counts III–XVIII against all four defendants for denying his due process by denying access to the search warrant application and for knowingly using the fruits of an unlawful search; (2) Counts IXX–XXVII against defendants Morris and Rabinowitz for denying his due process by unlawfully misappropriating district court records; and (3) Counts XIX–XX against all defendants for denying his due process by conspiring to use the grand jury in service of a planned civil suit. Amended Complaint, ECF No. 20-1 at 15-17. For all the following reasons, the Court will dismiss plaintiff's remaining *Bivens* claims.

Time and again, the Supreme Court has acknowledged the limited nature of the *Bivens* cause of action. *See, e.g., Minneci v. Pollard*, 565 U.S. 118, 123-126 (2012). Most recently, the Supreme Court reiterated that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1857 (2017) (quoting *Iqbal*, 556 U.S. at 675). The Supreme Court has only approved *Bivens* claims in three limited contexts and instructed that "if [a] case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new." *Id.* at 1859-1860 (listing the three previous *Bivens* claims that the Supreme Court approved: "a claim against FBI agents for handcuffing a man in his own home without a warrant; a claim against a Congressman for firing his female secretary; and a claim against prison officials for failure to treat an inmate's asthma."). When considering whether to extend a *Bivens* claim to a new context, courts must analyze whether "there are special factors counselling hesitation in the absence of affirmative action." *Id.* at 1857. Courts must consider whether there are "alternative methods of relief" that weigh against extending a *Bivens* remedy. *Id.* at 1863.

Here, Mr. Berman had ample opportunity to seek relief in the fifteen years since his office was searched. He argues that he was denied due process because the affidavit was sealed

and intentionally withheld from him. He also contends that his due process was violated because defendant Morris failed to serve him with the government's 2008 motion to unseal the affidavit. But Mr. Berman had numerous paths to recover the sealed affidavit. For instance, he could have moved in the civil litigation to recover the entire affidavit during discovery. His argument that he could not access the affidavit because it was still under seal when discovery ended in 2007 strains credulity. It is not as if he was unaware of the affidavit's existence. As previously discussed, he knew about it all the way back to 2000 and at the time believed that it contained numerous falsehoods. The record does not reflect any attempt on his part to discover the affidavit during the course of the civil litigation. Moreover, he could have at any point filed a renewed motion to unseal the affidavit in the separate proceeding before the magistrate judge— something he eventually did in 2013. See Case No. 00-mj-00138, ECF No. 23. Mr. Berman now alleges that his due process was violated because the defendants withheld the affidavit. In reality, he failed to pursue the multiple paths available to him to retrieve the affidavit. Because alternative methods of relief existed for the plaintiff, the Court will not extend a *Bivens* remedy to this new context. Similarly, the Court will not extend a *Bivens* remedy based on Mr. Berman's allegations that the "fruits" of the search warrant were used in the civil proceeding. He could have moved to exclude that evidence in his civil suit. Moreover, defendant Rabinowitz could not have violated a clearly established constitutional right. As discussed already, the search was not illegal and defendant Rabinowitz petitioned the court to access that information.

Mr. Berman also asserts that the Court should recognize a *Bivens* claim for an alleged violation of Rule 6(e) of the Criminal Rules of Procedure. He alleges in his Amended Complaint that "[u]nder the direct supervision of Ms. Rabinowitz, Mr. Finkelstein intentionally, and without authorization of the grand jury court, distributed multiple grand jury documents to individuals

not authorized or otherwise permitted to view such documents under Fed. R. Crim. P. Rule 6(e), a direct violation of Plaintiffs rights." Amended Complaint, ECF No. 20-1 at ¶29. Berman provides no further detail in the Amended Complaint supporting this allegation. However, even accepting this as true for the purposes of a motion to dismiss, the Court cannot extend a *Bivens* remedy. There is no constitutionally protected right against disclosure of grand jury materials, nor does Mr. Berman explain how that would be a violation of his due process rights. Moreover, he had an alternative method of relief—he could have highlighted his concerns in the context of the civil litigation.

Even if the Court were to extend *Bivens* to this context, the claims would still be dismissed on immunity grounds. The allegations levied against defendant Morris all involved her role as a government prosecutor. Mr. Berman posits that she impaneled the grand jury and failed to disclose a document that would have refuted her theory of the case. He also alleges that she extended the grand jury investigation in order to "enhance a planned civil complaint." Amended Complaint, ECF No. 20-1 at ¶43. All of that conduct involves her activity before the grand jury—conduct that was "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). And the "Supreme Court has explained that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and *which occur in the course of his role as an advocate for the State*, are entitled to the protections of absolute immunity." *Atherton v. District of Columbia Office of Mayor*, 567 F.3d 672, 686 (citations and quotations removed) (emphasis in original). That the government ultimately decided not to bring charges in this case does not change the fact that defendant Morris was operating in a prosecutorial role in her conduct related to the grand jury. Thus, she is absolutely immune from suit for that conduct.

Defendants Rabinowitz and Finkelstein also enjoy absolute immunity for any alleged conduct in the civil proceeding against Mr. Berman. Although not a criminal suit, the Supreme Court has held that absolute immunity extends to government attorneys that "perform[] certain functions analogous to those of a prosecutor." *Butz v. Economou*, 438 U.S. 478, 515 (1978). Here, Mr. Berman was sued for an alleged violation of 18 U.S.C. § 209– a statute that provides for both criminal and civil liability. As the defendants note, Mr. Berman was also alleged to have breached his fiduciary duties. Defendants Rabinowitz and Finkel stein, in their roles bringing that case on behalf of the government against Mr. Berman, were acting like prosecutors and are therefore immune from this suit.[5]

### C. Dismissal for Lack of Personal Jurisdiction and Failure to Serve

Defendants also argue that the case should be dismissed against defendants Morris and Crook for lack of personal jurisdiction. Since neither of them currently reside in the District of Columbia, the Court only has personal jurisdiction over them if the conduct detailed in the suit is covered under the D.C. long-arm statute, D.C. Code § 13-423(a). Mr. Berman argues that the personal jurisdiction exists because of the business the defendants conduct in D.C. But contact with D.C. pursuant to federal employment is not sufficient to assert jurisdiction. "[I]t is well-settled that this Court cannot assert jurisdiction over an individual defendant based on his actions taken pursuant to his employment." *Islamic Am. Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 58 (D.D.C. 2005) (citing *Ali v. District of Columbia*, 278 F.3d 1, 7 (D.C. Cir. 2002). Since Mr. Berman does not plead any additional facts related to their contact with this

---

[5] The defendants are also correct that any claim related to "misappropriation" of grand jury materials would be time barred. The motion to access the grand jury evidence (which was served on Mr. Berman) was granted in 2003, 13 years prior to this lawsuit.

14

forum, the case may be dismissed against defendants Morris and Crook for lack of personal jurisdiction.

Defendants also correctly note that Mr. Berman failed to effectuate proper service pursuant to Federal Rule of Civil Procedure 4. Under Rule 4(i)(3), to serve a United States officer or employee in an individual capacity, "a party must serve the United States and also serve the officer or employee under Rule 4(e), (f), or (g)." Rule 4(e) permits service based on the rules of the state in which the district court is located or where service is made. D.C. law permits service by certified mail, but to be effective the plaintiff must receive a signed return-receipt from the defendant or someone authorized to accept service on behalf of the defendant. *See, e.g., Eldridge v. District of Columbia*, 866 A.2d 786, 787-88 (D.C. 2004). Berman's return-of-service filing indicates that he attempted to serve the defendants via certified mail. However, none of the return receipts contain signatures from the defendants in this case or individuals authorized to accept service on their behalf. Only two receipts provided by Mr. Berman contain signatures, and they are of unspecified individuals. Since the plaintiff bears the burden of establishing service and Mr. Berman was made aware of defective process by defendants in a filing in December 2016, ECF No. 6, the Court may dismiss the claims against the defendants for failure to serve pursuant to Rule 4(m).

### D.     Dismissal Pursuant to Westfall Certification

Mr. Berman does not specifically allege a tort claim in his Amended Complaint. But to the extent it can be construed to contain such a claim, the defendants argue they can be dismissed pursuant to the Westfall certification filed by the government in this case. See Certification of Daniel F. Van Horn, ECF No. 29-1. Under the Westfall Act, 28 U.S.C. § 2679(d), if the United States certifies that the individual defendant is operating within the scope of his office, the

"employee is dismissed from the action, and the United States is substituted as defendant in place of the employee." *Osborn v. Haley*, 549 U.S. 225, 229 (2007). The claims then proceed against the United States and are governed by the Federal Tort Claims Act ("FTCA"). *Id.*

Here, the United States certifies that the defendants were operating within the scope of their employment. Therefore, to the extent Mr. Berman asserts a tort claim, the United States would be the sole defendant and the suit would need to be cognizable under the FTCA. Since Mr. Berman has not alleged that he exhausted his administrative remedies, his suit against the government cannot be brought under the FTCA. *See* 28 U.S.C. § 2675(a). Claims for damages against the United States would also be barred on the basis of sovereign immunity. See *Clark v. Library of Cong.*, 750 F.2d 89, 103 (D.C. Cir. 1984) ("Sovereign immunity ... bar[s] suits for money damages against officials in their official capacity absent a specific waiver by the government.").

## II. CONCLUSION

For the foregoing reasons, the Court will **GRANT** the defendants' motion to dismiss. A separate Order accompanies this Memorandum Opinion.

Date: February 1, 2018

Royce C. Lamberth
United States District Judge